CARLTON, J., DISSENTING:
 

 ¶ 23. I respectfully dissent from the majority's decision to affirm the circuit court's denial of Moore's PCR motion. I find that the record reflects that Moore presented sufficient evidence to warrant an evidentiary hearing on his motion; as a result, I would reverse the circuit court's judgment and remand this case for further proceedings consistent with this separate opinion.
 
 [10]
 

 ¶ 24. Moore appeals the Rankin County Circuit Court's summary dismissal of his March 8, 2016 PCR motion without an evidentiary hearing.
 
 [11]
 
 On appeal, Moore asserts the following: (1) the circuit court erroneously found his PCR motion was successive-writ barred; (2) his attorneys' incorrect parole-eligibility advice rendered his guilty pleas involuntary and amounted to ineffective assistance of counsel; and (3) the circuit court erroneously denied his request for an evidentiary hearing.
 

 ¶ 25. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if it is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review."
 
 Thinnes v. State
 
 ,
 
 196 So.3d 204
 
 , 207-08 (¶ 10) (Miss. Ct. App. 2016) (quoting
 
 Carson v. State
 
 ,
 
 161 So.3d 153
 
 , 155 (¶ 2) (Miss. Ct. App. 2014) ).
 

 I. Whether Moore's March 8, 2016 PCR motion is successive-writ barred.
 

 ¶ 26. On appeal, Moore argues the circuit court erroneously dismissed his current PCR motion as successive-writ barred without holding an evidentiary hearing, and Moore claims relief is due because Robert Tubwell, a non-attorney, unlawfully prepared and filed the prior 2014 PCR motions without his permission. In his March 8, 2016 PCR motion, Moore contended the two prior 2014 motions "were not properly prepared or filed pursuant to the requirements of the Mississippi Uniform Postconviction Collateral Relief Act." The face of each 2014 motion also reflected ambiguity and irregularity in stating the motions were filed "by and through counsel" without identifying any attorney or Mississippi bar number. Moore further asserted in his March 8, 2016 PCR motion that Tubwell prepared and filed the 2014 motions and that he (Tubwell) engaged in the crime of the unauthorized practice of law as defined by Mississippi Code Annotated section 73-3-55 (Rev. 2012).
 

 ¶ 27. With regard to the unauthorized practice of law, section 73-3-55 provides:
 

 It shall be unlawful for any person to engage in the practice of law in this state who has not been licensed according to law. Any person violating the provisions of this section shall be
 deemed guilty of a misdemeanor, and, upon conviction, shall be punished in accordance with the provisions of Section 97-23-43. Any person who shall for fee or reward or promise, directly or indirectly, write or dictate any paper or instrument of writing, to be filed in any cause or proceeding pending, or to be instituted in any court in this state, or give any counsel or advice therein ... shall be held to be engaged in the practice of law.
 

 ¶ 28. In addition, the Mississippi Supreme Court has stated:
 

 The practice of law includes the drafting or selection of documents, the giving of advice in regard to them, and the using of an informed or trained discretion in the drafting of documents to meet the needs of the person being served. So any exercise of intelligent choice in advising another of his legal rights and duties brings the activity within the practice of the legal profession.
 

 Darby v. Miss. State Bd. of Bar Admissions
 
 ,
 
 185 So.2d 684
 
 , 687 (Miss. 1966) (citation omitted).
 

 ¶ 29. In the present case, Moore asserts that Tubwell clearly engaged in the unauthorized practice of law by taking the following actions: (1) accepting a fee from Moore's mother, Lisa; (2) advising Lisa of Moore's legal rights; and (3) writing and filing the two 2014 PCR motions on Moore's behalf without his knowledge or permission. In its judgment dismissing Moore's March 8, 2016 PCR motion, the circuit court issued no findings on Moore's prior PCR claims other than to state the prior motions rendered Moore's current PCR filing successive-writ barred. However, in the affidavit attached to his March 8, 2016 PCR motion, Moore averred that his mother, Lisa, mistakenly believed Tubwell was an attorney and paid Tubwell to file a motion on Moore's behalf. Moore further stated, "My mother later learned that Tubwell was not an attorney and that the Mississippi Bar Association was trying to stop him from trying to practice law." According to Moore, he "never met or spoke to" Tubwell and "did not ask or give permission to Tubwell to file [the two 2014 PCR] motions." Moore further averred in his affidavit that he only learned Tubwell had filed the two 2014 PCR motions after the circuit court dismissed them.
 

 ¶ 30. As further support for his claims, Moore attached an exhibit to his appellate brief that shows the DeSoto County Chancery Court enjoined Tubwell in 2014 from engaging in the unauthorized practice of law. Because the chancery court's order is not part of the record before this Court, Moore asks that this Court on appeal take judicial notice of the document. In addition, in his appellate brief, Moore cites a prior opinion where the supreme court recognized Tubwell had engaged in the unauthorized practice of law.
 
 See
 

 Miss. Bar v. Thompson
 
 ,
 
 5 So.3d 330
 
 , 338 (¶ 40) (Miss. 2008).
 
 See also
 

 Tubwell v. Anderson
 
 ,
 
 776 So.2d 654
 
 , 656 (¶ 1) (Miss. 2000) (recognizing Tubwell's history as a "writwriter and ... filer of frivolous lawsuits and appeals"). Based on his assertions that Tubwell engaged in the unauthorized practice of law and filed the two prior 2014 PCR motions without his permission, Moore asks this Court to find the 2014 motions are void and therefore pose no bar to his March 8, 2016 PCR motion.
 

 ¶ 31. In review of this issue, I acknowledge that section 73-3-55 establishes the practice of law without a license constitutes a crime in Mississippi. The record reflects that Moore presented evidence to support his claims, and the record reflects ambiguity on the face of each of the two motions filed in 2014. Moore's own affidavit avers that his mother hired Tubwell and that Tubwell, without a license to
 practice law, filed the two 2014 PCR motions without Moore's authorization. The circuit court held no evidentiary hearing and issued no findings as to the credibility of Moore's claims that he never authorized the 2014 PCR motions.
 
 [12]
 

 ¶ 32. After reviewing the record and applicable caselaw and statutory law, I find that Moore presented sufficient evidence to warrant a hearing on whether Tubwell filed the two prior 2014 PCR motions without Moore's authorization and, if so, whether the motions should pose a procedural bar to Moore's instant March 8, 2016 PCR motion.
 
 [13]
 
 I would therefore reverse the circuit court's dismissal of Moore's March 8, 2016 PCR motion and remand for an evidentiary hearing to determine whether Moore's current PCR motion is procedurally barred. The record reflects Moore also asserts that his PCR motion is not successive-writ barred because his additional claims of involuntary guilty pleas and ineffective assistance of counsel demonstrate a violation of his fundamental constitutional right to due process. Because I find that the record shows that Moore also presented sufficient proof on these remaining claims to warrant an evidentiary hearing on them as well, I will briefly turn to a discussion of these two issues.
 

 II. Whether Moore's attorneys provided incorrect parole-eligibility advice that rendered his guilty pleas involuntary and amounted to ineffective assistance of counsel.
 

 ¶ 33. Moore additionally argues the circuit court erred in summarily dismissing his March 8, 2016 PCR motion as a successive writ because his motion raises a violation of his fundamental constitutional right to due process. Specifically, Moore contends that his attorneys provided incorrect parole-eligibility advice that induced his guilty pleas and amounted to ineffective assistance of counsel. In addressing a similar situation in
 
 Sylvester v. State
 
 ,
 
 113 So.3d 618
 
 , 621-22 (¶¶ 9-10) (Miss. Ct. App. 2013), this Court acknowledged:
 

 The trial court may summarily dismiss a motion for postconviction relief if it plainly appears from the face of the motion, any annexed exhibits[,] and the prior proceedings in the case that the movant is not entitled to any relief. When the only support the defendant offers is his own affidavit, and it is contradicted by unimpeachable documents in the record, the supreme court has held that an evidentiary hearing is not required.
 

 However, when the movant attaches an affidavit of another who supports the allegation, the trial court may be required to conduct an evidentiary hearing. This Court has held that an attack on a facially correct plea may survive summary dismissal if supporting affidavits of other persons are attached.
 

 Id.
 

 (internal citations and quotation marks omitted).
 

 ¶ 34. As in both
 
 Sylvester
 
 and
 
 Readus
 
 , Moore attached affidavits to his current PCR motion to support his claims. In addition to his own affidavit, Moore attached an affidavit from his mother, Lisa. Thus, in applying precedent to the instant case, this Court on appeal must determine "whether [Moore's] motion and [the supporting] affidavit[s]
 

 were sufficient evidence such that his allegations were not overwhelmingly belied by the plea-hearing transcript."
 
 Sylvester
 
 ,
 
 113 So.3d at 622
 
 (¶ 11). I therefore turn to a review of Moore's claims regarding his guilty pleas and ineffective assistance to discuss whether he provided sufficient evidence to warrant an evidentiary hearing on these issues.
 

 a. Involuntary Guilty Pleas
 

 ¶ 35. As previously stated, Moore argues his reliance on his attorneys' incorrect parole-eligibility advice rendered his guilty pleas involuntary. In recently discussing another PCR movant's similar claim, this Court explained:
 

 A voluntary guilty plea emanates from the defendant's informed consent. An allegation that the defendant pled guilty in response to counsel's mistaken advice may vitiate the plea, because it indicates the defendant may not have been fully aware of the consequences of the plea. The petitioner bears the burden of proving by a preponderance of the evidence that his plea was involuntarily entered.
 

 This Court has previously stated:
 

 A guilty plea is binding on a defendant only if it is entered voluntarily and intelligently. A plea is considered voluntary and intelligent only if the defendant is informed of the nature of the charge against him and the consequences of the plea. Before the trial court may accept a guilty plea, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. As part of its voluntariness inquiry, the court must determine whether the accused understands the minimum and maximum sentences for the charge.
 

 We have further stated:
 

 It is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted. On the other hand, a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation.
 

 In
 
 Sylvester
 
 , this Court found that the defendant's eligibility for trusty earned time was analogous to eligibility for parole. Th[is] Court further found that, if a defendant alleges he was given erroneous advice by his attorney as to his eligibility for trusty earned time (or for parole) and that erroneous advice goes uncorrected, and he provides evidence other than his own statement (such as a sworn affidavit from a third party), he is entitled to an evidentiary hearing.
 

 Thinnes v. State
 
 ,
 
 196 So.3d 204
 
 , 208-09 (¶¶ 15-18) (Miss. Ct. App. 2016) (internal citations and quotation marks omitted).
 
 [14]
 

 ¶ 36. In his affidavit attached to his PCR motion, Moore said he rejected the State's first plea offer for thirty-five years. Moore's affidavit further provided that he initially rejected a fifty-year plea deal until one of his attorneys informed him that he would be parole eligible after serving about five years. According to Moore's affidavit, his attorney told him he must serve one-fourth of his sentence (about twelve and a half years) but that he could reduce his time until parole eligibility to about five years through trusty time and meritorious earned time.
 

 ¶ 37. Significantly, Moore also attached to his PCR motion an affidavit from his mother, Lisa, who stated that one of her son's attorneys "mentioned something [to her] about [Moore] having to serve six (6) years, and he mentioned something about forty percent (40%)[.]" Lisa further stated that, following her son's guilty plea, Moore called her and said his attorneys had explained that, "if he accepted the [fifty-]year plea deal and ple[d] guilty, then [he] would serve [twelve and a half] years minus [six] years for good time minus about one year for meritorious earned time, making [him] eligible for parole in about [five] years." Lisa also stated Moore informed her that he initially refused the fifty-year plea deal until his attorneys advised him that he would only have to serve five years before becoming eligible for parole.
 

 ¶ 38. Similarly to the present case, in
 
 Readus v. State
 
 ,
 
 837 So.2d 209
 
 , 211 (¶ 4) (Miss. Ct. App. 2003), the movant attached his own affidavit and one from his mother to support his claims that his attorney's incorrect sentencing advice rendered his guilty pleas involuntary and amounted to ineffective assistance of counsel. In his own affidavit, Readus averred "his attorney told him that, if he pled guilty, he would be sentenced to 'six months and ten years on paper' and that he would 'get RID.' "
 

 Id.
 

 at 212
 
 (¶ 9). "Readus'[s] mother's affidavit averred that she first spoke with the attorney the morning of the sentencing hearing in anticipation of her testimony ... [and] that the attorney told her that Readus 'would get about six years and he said something about papers after that.' "
 

 Id.
 

 at 211
 
 (¶ 5). Although acknowledging a discrepancy existed in the affidavits as to the exact sentence length the attorney promised Readus, this Court found that the difference failed to invalidate the entirety of the affidavits.
 

 Id.
 

 at 214
 
 (¶ 14). Instead, the
 
 Readus
 
 Court concluded that Readus's supporting affidavits corroborated that his attorney provided incorrect advice and "instilled an expectation of a far more lenient sentence than Readus actually received."
 

 Id.
 

 We further determined in
 
 Readus
 
 that "[c]ounsel's alleged deficiency was not 'cured' by the plea colloquy because the erroneous advice was not directly contradicted by the [trial] court's questioning."
 

 Id.
 

 at 214-15
 
 (¶ 18) (citation omitted). As acknowledged, in the present case, the corroboration Moore's mother offered in her affidavit of incorrect legal advice constitutes similar corroboration to that offered by the mother's affidavit in
 
 Readus
 
 .
 

 ¶ 39. Also as in
 
 Readus
 
 , Moore contends that the circuit court failed during the plea hearing to correct his attorney's erroneous parole-eligibility advice. Indeed, the record reflects that, although the circuit court informed Moore of the rights he waived and the minimum and maximum penalties applicable if he pled guilty, the circuit court never addressed the issue of Moore's parole eligibility. As a result, during the plea colloquy, the circuit court failed to correct the misinformation that Moore's supporting affidavits allege his attorneys provided as to his parole eligibility. In the analogous case of
 
 Readus
 
 , this Court found that the movant raised sufficient evidence to warrant an evidentiary hearing.
 

 Id.
 

 at 210
 
 (¶ 2).
 
 [15]
 
 Accordingly, I likewise find Moore is entitled to an evidentiary hearing on this issue and that the circuit court abused its discretion by summarily
 dismissing his PCR motion without granting the hearing.
 

 b. Ineffective Assistance of Counsel
 

 ¶ 40. During his plea hearing, Moore swore under oath he was satisfied with his attorneys' representation. "[A] strong presumption ... exists that in-court declarations are truthful."
 
 Thinnes
 
 ,
 
 196 So.3d at 210
 
 (¶ 25) (citing
 
 Sylvester
 
 , 113 So.3d at (¶ 24) ). On appeal, however, Moore argues his attorney provided ineffective assistance of counsel. To prevail on his ineffective-assistance claim, Moore must prove: (1) his attorneys' performance was deficient; and (2) he suffered prejudice as a result of the deficient performance.
 
 See
 

 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). With regard to a
 
 Strickland
 
 analysis, this Court has explained, "[I]t is presumed that counsel's representation falls within the range of reasonable professional assistance. However, the defendant may overcome the presumption. To do so, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
 
 Sylvester
 
 ,
 
 113 So.3d at 624
 
 (¶ 22) (internal citation and quotation marks omitted).
 

 ¶ 41. The affidavits Moore attached to his March 8, 2016 PCR motion support his assertions that (1) his attorneys misinformed him about his parole eligibility; (2) he detrimentally relied on this erroneous information in pleading guilty; and (3) but for his attorneys' erroneous parole-eligibility advice, he would not have decided to accept the State's fifty-year plea offer and plead guilty. Thus, if Moore's instant PCR motion is not found to be procedurally barred as a successive writ due to the unauthorized and illegal actions of an unlicensed writ writer, then Moore's affidavits provide sufficient corroborating evidence to warrant an evidentiary hearing as to his ineffective-assistance-of-counsel claim.
 
 Compare
 

 Readus
 
 ,
 
 837 So.2d at 214-15
 
 (¶ 18).
 

 ¶ 42. I would therefore reverse the circuit court's summary dismissal of Moore's March 8, 2016 PCR motion and remand this case for an evidentiary hearing on the claims raised by Moore's PCR motion. As a result, I respectfully dissent from the majority's decision.
 

 LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.
 

 See
 

 Readus v. State
 
 ,
 
 837 So.2d 209
 
 , 210 (¶ 2) (Miss. Ct App. 2003) (reversing the circuit court's summary dismissal of the movant's PCR motion and remanding for an evidentiary hearing on his allegations of an involuntary plea and ineffective assistance of counsel).
 

 The circuit court dismissed Moore's March 8, 2016 PCR motion without an evidentiary hearing after finding that the motion was procedurally barred and that the face of the motion reflected Moore was not entitled to any relief.
 

 See
 
 Miss. Const. art. 3, § 26 (discussing the right to self-representation);
 
 Miss. Code Ann. § 99-39-23
 
 (6) (discussing the successive-writ bar).
 

 To warrant an evidentiary hearing, Moore must support his claims with at least a preponderance of the evidence.
 
 See
 

 James v. State
 
 ,
 
 220 So.3d 989
 
 , 991 (¶ 5) (Miss. Ct. App. 2016).
 

 See also
 

 Fairley v. State
 
 ,
 
 834 So.2d 704
 
 , 707 (¶ 8) (Miss. 2003) ("The rule arising ... is that failure to mention something concerning parole eligibility may be no problem, but erroneous information concerning parole and sentencing at least entitles the petitioner to an evidentiary hearing on whether he relied on the erroneous information.").
 

 See also
 

 James v. State
 
 ,
 
 220 So.3d 989
 
 , 991 (¶ 5) (Miss. Ct. App. 2016) ("At an evidentiary hearing on [a PCR motion], the burden of proof is on the petitioner to 'prove by a preponderance of the evidence that he is entitled to the relief' " (quoting
 
 Miss. Code Ann. § 99-39-23
 
 (7) (Rev. 2015))).